UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
LENORA B. FULANI, et al.,           :
                                    :
                   Plaintiffs,      :     04 Civ. 6973 (LAP)
                                    :
v.                                  :     OPINION AND ORDER
                                    :
TERRY MCAULIFFE, DEMOCRATIC         :
NATIONAL COMMITTEE, JOHN F. KERRY,  :
JOHN EDWARDS, et al.,               :
                                    :
                   Defendants.      :
                                    :
------------------------------------x

LORETTA A. PRESKA, United States District Judge:

    This is yet another in a long line of cases in which Plaintiff Lenora Fulani has misused the courts in an attempt to pursue a political agenda which she is not able to accomplish at the ballot box. For the reasons set out below, this misguided effort also fails.[1]

    Plaintiffs Lenora Fulani, Cathy Stewart, Nancy Ross, David Cherry, Jason Olson, Evelyn Dougherty, Jennifer Bullock, Linda

---

[1] A sampling of the at least 35 published cases of this ilk, almost all of which were dismissed before trial, include: Fulani v. F.C.C., 49 F.3d 904 (2d Cir. 1995); Fulani v. Bentsen, 35 F.3d 49 (2d Cir. 1994); Fulani v. League of Women Voters Educ. Fund, 882 F.2d 621 (2d Cir. 1989); Committee for a Unified Independent Party, Inc. v. F.E.C., No. 00 Civ. 3476, 2001 U.S. Dist. LEXIS 16399 (S.D.N.Y. Oct. 11, 2001); New Alliance Party v. F.B.I., 858 F. Supp. 425 (S.D.N.Y. 1994); New Alliance Party v. New York State Bd. of Elections, 861 F. Supp. 282 (S.D.N.Y. 1994); Fulani v. Brady, 809 F. Supp. 1112 (S.D.N.Y. 1993); Fulani v. New York Times Co., 686 N.Y.S.2d (N.Y. App. Div. 1999); Fulani v. F.E.C., 147 F.3d 924 (D.C. Cir. 1998); Coalition for Free and Open Elections, Prohibition Party v. McElderry, 48 F.3d 493 (10th Cir. 1995); Fulani v. Smith, 640 So.2d 1188 (Fla. Dist. Ct. App. 1994).

Curtis, Mary Ann Bock, Murray Dabby and the Committee for a Unified Independent Party (collectively, "Plaintiffs") allege that Defendants Terry McAuliffe, the Democratic National Committee ("DNC"), John F. Kerry, John Edwards, Michael Madigan, Michael Clifford, Toby Moffet, Jeff Merrick, David Jones, and Darrell McGraw, (collectively, "Defendants") in connection with any number of unnamed parties, conspired to keep Ralph Nader ("Nader") and Peter Camejo ("Camejo") off of the ballot in states across the country as independent candidates for the offices of President and Vice President of the United States. Defendants McAuliffe, DNC, Kerry, Edwards, Madigan, Clifford, Moffet, Merrick and McGraw have all filed motions to dismiss. Because Plaintiffs' Complaint fails to establish any deprivation of a federal right, plead any conspiracy, or satisfy the specific requirements of 42 U.S.C. §§ 1983 or 1985, Defendants' motions are granted.

I.  <u>Background</u>

The individual plaintiffs in this action are registered voters in the states of New York, Illinois, California, Massachusetts, Pennsylvania, Texas and Georgia. The Committee for a Unified Independent Party ("CUIP") is a national not-for-profit organization dedicated to the expansion of political participation and the development of a third political party. Plaintiffs all supported the candidacy of Nader and Camejo for

President and Vice President of the United States, respectively, ("Nader-Camejo") in 2004.

Defendant DNC functions as the leadership and administrative body of the Democratic Party. Defendant McAuliffe was the Chairman of the DNC during the 2004 Presidential election. Defendants Kerry and Edwards were the Democratic candidates for the offices of President and Vice President of the United States, respectively. Defendant Madigan is the Speaker of the Illinois House of Representatives and the Chairperson of the Illinois Democratic Party. Defendant Clifford is the Kanawha County Prosecutor in the State of West Virginia, and Defendant McGraw is the Attorney General of the State of West Virginia. Defendant Moffet is a former Congressman from the State of Connecticut. Defendant Merrick is the Chair of the Multnomah County Democratic Party organization in Portland, Oregon. Defendant Jones is the president of a website with the web address of www.TheNaderFactor.com.

According to Plaintiffs, in early 2004, once Nader declared his intention to run for President, Defendants began a concerted, organized conspiracy to "prevent Nader from obtaining a line on the ballot in as many states as possible, and, thereby, impede the development" of a third national political party.[2] (Compl.,

---

[2] The majority of Plaintiffs' Complaint recounts the recent failure of a third national political party to take root in the
(continued...)

¶ 27.) Plaintiffs allege that: (1) Defendant McAuliffe issued public statements "about the importance of eliminating Nader as a factor" in the election; (2) Defendant Jones "orchestrated a paid media and propaganda campaign" to combat Nader-Camejo's efforts at ballot access; (3) Defendant Moffet coordinated a national plan to "drain [Nader's] resources" and trained lawyers to help in that effort; (4) Defendant Clifford announced that he was commencing a criminal investigation of persons collecting Nader-Camejo petition signatures in West Virginia; (5) Defendant McGraw announced that he would file a lawsuit challenging the Nader-

---

(continued...)
United States.  Plaintiffs write that:

> Contemporary efforts to develop a national third party have met with stiff resistance from bi-partisan regulators.  They have used their position of dominance in Congress and the various state governments to establish a legal and administrative framework through operatives therein in a manner that favors the continued dominance of the Democratic and Republican Parties and, in particular, the position of the Democratic Party as the dominant left of center political party.

(Compl., ¶ 19.)  The Complaint continues to discuss Democratic and Republican efforts to marginalize third-party Presidential candidates Ross Perot, Patrick Buchanan and Ralph Nader, the failure of the Federal Election Commission to award third-party candidates funding, and two polls which ostensibly show that a considerable percentage of American voters would support the development of a national third political party. (Compl., ¶¶ 19-22.)  These observations are better characterized as partisan talking points than legally cognizable facts.  Additionally, however, they bear no direct connection to the supposed conspiracy that caused Plaintiffs' rights to be violated.

4

Camejo petition in West Virginia; (6) Defendant Merrick caused the Nader-Camejo nominating caucus in Portland to be crowded with Democratic activists, thus preventing Nader-Camejo from reaching the required 1000 supporter threshold; (7) Defendant Madigan directed government workers to challenge the Nader-Camejo petition in Illinois; (8) various defendants persuaded the Michigan Secretary of State not to recognize Nader-Camejo as the 2004 Reform Party candidates; (9) various defendants caused an organization called Citizens for Ethics and Responsibility in Washington to file complaints with the Federal Election Commission ("FEC") against Nader-Camejo; and (10) Democratic Party lawyers and operatives generally reviewed Nader-Camejo nominating petitions "with a fine tooth comb" and instituted challenges against the petitions in Arizona, Colorado, Illinois, Iowa, Maine, Michigan, Missouri, Nevada, New Jersey, New Mexico, Oregon, Pennsylvania and Wisconsin. (Compl., ¶ 29.)

Based on these allegations, Plaintiffs claim that: (1) pursuant to 42 U.S.C. § 1983, Defendants have engaged in a conspiracy to deny Plaintiffs' right to vote and participate as independents in the presidential election, thwarting Plaintiffs' constitutionally protected goal of developing a third national political party; and (2) pursuant to 42 U.S.C. § 1985, Defendants have engaged in a conspiracy to deny Plaintiffs' right to vote and right to equal protection under the laws.

5

Collectively, Defendants' motions to dismiss argue that Plaintiffs' Complaint is deficient in four ways: (1) it fails to allege any actionable deprivation of a federal right; (2) it fails to allege any underlying conspiracy; (3) it fails to satisfy the state action requirement of § 1983; and (4) it fails to satisfy the race- or class-based discrimination requirement of § 1985.[3]  Because Defendants' arguments are, in fact, correct on each of these grounds, their motions to dismiss are granted.

II. <u>Standard for a Motion to Dismiss</u>

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must view the complaint in the light most favorable to the plaintiff. <u>Yoder v. Orthomolecular Nutrition Inst., Inc.</u>, 751 F.2d 555, 562 (2d Cir. 1985)(citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47-48 (1957)). I must accept as true the factual allegations stated in the complaint, <u>Zinermon v. Burch</u>, 494 U.S. 113, 118 (1990), and draw all reasonable inferences in favor of the plaintiff. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Hertz Corp. v. City of N.Y.</u>, 1 F.3d 121, 125 (2d Cir. 1993). A motion to dismiss can be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its

---

[3] Defendants Clifford, Moffet, Madigan, McGraw and Merrick also raise personal jurisdiction, immunity and standing objections to Plaintiffs' Complaint. However, because the Complaint states no deprivation of a federal right, establishes no conspiracy, and does not meet the requirements of § 1983 or § 1985, I do not reach Defendants' additional arguments.

6

claim which would entitle plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

III. Discussion

    A. Failure to Establish Any Constitutional Violations

Sections 1983 and 1985 do not in themselves create any substantive right but merely provide remedies for deprivations of rights established elsewhere. See Albright v. Oliver, 510 U.S. 266, 271 (1994); United Bhd. of Carpenters and Joiners, Local 610 v. Scott, 463 U.S. 825, 833 (1983). Both sections, therefore, require a plaintiff to establish with specificity the rights of which he has been deprived. See Albright, 510 U.S. at 271; Scott, 463 U.S. 833.

Plaintiffs maintain that they have been deprived of their "right to vote and participate as independents in the election" and "equal protection of the laws." (Compl., ¶¶ 36, 39.) However, the facts as alleged do not constitute any such deprivations. Initially, it is not an unconstitutional deprivation of the right to vote for states to regulate their own elections by passing and enforcing laws regarding ballot access. Further, the speech which Plaintiffs complain of -- Defendants' public statements against the Nader-Camejo campaign -- has been afforded the highest First Amendment protection.

The rights of voters are among the most fundamental in our constitutional structure. See Burdick v. Takushi, 504 U.S. 428,

7

433 (1992); Anderson v. Celebrezze, 460 U.S. 780, 788 (1983). However, candidacy is not a fundamental right in our political system, Clements v. Fashing, 457 U.S. 957, 963 (1982), and "not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates." Id. "As a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." Storer v. Brown, 415 U.S. 724, 730 (1974).

Plaintiffs do not label any particular eligibility requirement unconstitutional but rather offer a general criticism of eligibility requirements for candidates. (Compl., ¶¶ 29-40.) However, "the State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." See Anderson, 460 U.S. at 788; American Party of Texas v. White, 415 U.S. 767 (1974); Jenness v. Fortson, 403 U.S. 431 (1971). Accordingly, "the mere fact that a State's system creates barriers tending to limit the field of candidates from which voters might choose does not of itself compel close scrutiny." Burdick, 504 U.S. at 433; Bullock v. Carter, 405 U.S. 134.

Where a state election law provision imposes only

8

reasonable, non-discriminatory restrictions upon the rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions. Burdick, 504 U.S. at 434 (internal quotations omitted). Here, Plaintiffs fail even to identify any particular State regulation, much less detail how a specific regulation curtails voters' rights to the point that a court should override the enacting State's interest in regulating elections and declare the regulation unconstitutional. Consequently, to the extent that Plaintiffs accuse Defendants of using State election law to impede the Nader/Camejo candidacy and violate Plaintiffs' equal protection rights or right to vote (Compl., ¶¶ 29-30), that claim fails as a matter of law.[4]

Plaintiffs also allege that certain statements by Defendants, specifically Defendant McAuliffe's public statements

---

[4] Additionally, Plaintiffs seem to argue that the various lawsuits initiated to challenge the Nader/Camejo nominating petitions deprived Plaintiffs of their voting and equal protection rights. However, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party" responsible for depriving a plaintiff of his rights. Dennis v. Sparks, 449 U.S. 24, 28 (1980).
Further, Defendants Clifford and McGraw, as a West Virginia State Prosecutor and Attorney General of the State of West Virginia, respectively, are entitled to qualified immunity with respect to the alleged acts at issue here. See Compl. ¶ 29g ("Defendant Clifford, on or about July 18, 2004, publically announced that he was commencing a criminal investigation of persons collecting signatures for the Nader-Camejo nominating petition in the State of West Virginia"); Compl. ¶ 29h ("Defendant McGraw has announced that he will be filing a lawsuit to challenge the validity of the Nader-Camejo petition in West Virginia"); Hope v. Pelzer, 536 U.S. 730, 739 (2002)(public official entitled to qualified immunity where acting reasonably within discretionary function of official responsibilities).

9

about the "importance of eliminating Nader as a factor in the race" (Compl., ¶ 29a.), also violated Plaintiffs' voting and equal protection rights. However, political speech is "at the core of our electoral process and of the First Amendment freedoms." Williams v. Rhodes, 393 U.S. 23, 32 (1968). "Debate on the qualifications of candidates [is] integral to the operation of the system of government established by our Constitution." Buckley v. Valeo, 424 U.S. 1, 14 (1976). "[T]he First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." Eu v. San Francisco County Democratic Central Committee, 489 U.S. 214, 223 (1989)(quoting Monitor Patriot Co. v. Roy, 401 U.S. 265, 272 (1971)). A limit on speech of this nature could only survive constitutional scrutiny if it served a compelling state interest. Id. at 283. Plaintiffs have offered no coherent argument in this regard, and, therefore, even accepting the allegations of the Complaint as true, Defendants' public political statements are not violative of Plaintiffs' rights in any way.

### B. Failure to Establish a Conspiracy

The sum total of Plaintiffs' accusation that Defendants were engaged in a nationwide conspiracy to keep Nader and Camejo out of the 2004 general election is the following:

> On information and belief, in or about March, 2004 defendants McAuliffe, DNC, Kerry and some or all of John Does 1-10 agreed to devise and carry out the conspiracy in order to prevent Ralph Nader from obtaining a line on the

10

>           ballot in as many states as possible and,
>           thereby, impede the development of the third
>           party.
>
>           The other defendants joined the conspiracy at
>           various times thereafter.

(Compl., ¶¶ 27-28.) This broad, conclusory statement regarding the formation of and membership in the conspiracy is insufficient to survive a motion to dismiss.[5]

"[I]t is well established that in order to survive a motion to dismiss, a § 1983 complaint must contain 'more than naked[,] improbable[,] unsubstantiated assertions without any specifics.'" Pollack v. Nash, 58 F. Supp. 2d 294, 299 (S.D.N.Y. 1999)(quoting Neustein v. Orbach, 732 F. Supp. 333, 346 (E.D.N.Y. 1990); see also Salahuddin v. Cuomo, 861 F.2d 40, 43 (2d Cir. 1988); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987); Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977); Koch v. Yunich, 533 F.2d 80, 85 (2d Cir. 1976). Here, Plaintiffs claim to have identified a conspiracy among Defendants generally, yet they fail to specify when the conspiracy was formed, where the conspiracy was formed, or who participated in the conspiracy.

In fact, Plaintiffs concede that they are "unable to specify when, by what means, and where all of the communications and meetings took place by which the conspiracy was formed and

---

[5] To allow Plaintiffs to replead their general conspiracy allegations would be futile. Even in the unlikely event that Plaintiffs' repleaded Complaint achieves the specificity necessary to withstand a 12(b)(6) motion, Plaintiffs will still be complaining of conduct that does not result in any deprivation of rights or satisfy the requirements of §§ 1983 and 1985.

11

implemented." (Def's. Br. at 3.) The Court of Appeals has consistently held that "a claim of conspiracy under § 1983 must contain more than mere conclusory allegations." Dwares v. The City of New York, 985 F.2d 94, 99 (2d Cir. 1993); see also Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992); Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck, 463 F.2d 620, 622-23 (2d Cir. 1972). The Court in Dwares continued:

> While a plaintiff should not plead mere evidence, he should make an effort to provide some details of time and place and the alleged effect of the conspiracy. Thus, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.

Dwares, 985 F.2d at 99-100 (internal citation and quotation omitted).

Plaintiffs counter that "conspiracies are by their very nature secretive operations that can hardly ever be proved by direct evidence," Rounseville v. Zahl, 13 F.3d 625, 632 (2d Cir. 1994). Of course, if potential secrecy was a valid defense of a poorly pleaded conspiracy complaint, the most outlandish and ludicrous conspiracy allegations would emerge from 12(b)(6) motions unscathed. Plaintiffs' position would reduce the conspiracy pleading standard to a mere formality.

Additionally, however, Plaintiffs' own Complaint belies the notion that the alleged conspiracy was any sort of "secretive

12

operation." Defendant McAuliffe is accused of issuing "public statements" about the need to eliminate Nader as a factor in the race. (Compl., 29a.) Defendant Jones orchestrated "paid media and propaganda campaigns." (Compl., 29b.) Defendant Clifford "publicly announced that he was commencing a criminal investigation of persons collecting signatures for the Nader-Camejo nominating petition." (Compl., 29g.) Defendant McGraw "announced" a lawsuit to challenge a Nader-Camejo petition. (Compl., 29h.) These are hardly the actions of a covert, secretive operation. Rather, Defendants' actions were conducted in full view of the public and by their very nature defy characterization as secretive.[6] Accordingly, I find the facts alleged insufficient to plead a conspiracy claim under either § 1983 or § 1985.

C. Failure to Satisfy the § 1983 State Action Requirement

To state a claim under 42 U.S.C. § 1983, a plaintiff must not only allege a deprivation of a federal right, privilege or immunity, but must allege that the deprivation was attributable,

---

[6] Moreover, "a complaint alleging a conspiracy to violate civil rights is held to heightened pleading standards." Julian v. New York City Transit Authority, 857 F. Supp. 242, 252 (E.D.N.Y. 1994); see also Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993); Summer v. Dixon, 709 F.2d 173, 175 (2d Cir., 1983). "To plead conspiracy, a complaint must allege specific facts suggesting that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end." Duvall v. Sharp, 905 F.2d 1188, 1189 (8th Cir. 1990). Plaintiffs' conclusory allegations here are insufficient to meet either this higher pleading standard or the standard outlined above.

13

at least in part, to a person acting under color of state law. See, e.g., Rendell-Baker v. Kohn, 457 U.S. 830, 835 (1982); Parratt v. Taylor, 451 U.S. 527, 535 (1981); Gomez v. Toledo, 446 U.S. 635, 640 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). A private actor may be subject to liability under § 1983 if he or she willfully collaborated or conspired with an official state actor in the deprivation of the federal right. Dwares, 985 F.2d at 98.

Defendants here are predominantly non-state actors, private individuals or organizations.[7] Plaintiffs' sole effort to show that Defendants are acting "under color of state law" appears to be an assertion that "public funds are being used in furtherance of the conspiracy" -- i.e., that the "Democratic Party convention and the Kerry-Edwards campaign are funded with federal moneys through the Federal Election Commission." (Compl., ¶¶ 30, 35.) However, the Supreme Court has held that mere receipt of public funds is insufficient to transform private entities or individuals into state actors. See, e.g., Rendell-Baker, 457 U.S. at 841; San Francisco Arts & Athletics, Inc. v. U.S. Olympic

---

[7] Defendants Clifford and McGraw are both West Virginia state officials, but as discussed above, those Defendants are entitled to qualified immunity.
Defendant Madigan, the Speaker of the Illinois House of Representatives, is accused of directing Illinois state workers to challenge the Nader-Camejo petition (Compl. ¶ 29l), and therefore he is the only Defendant against whom Plaintiffs' § 1983 claim may be properly pleaded. However, an individual cannot conspire with himself, and the Complaint is devoid of any specifics as to who supposedly joined Defendant Madigan in a conspiracy to challenge the Nader-Camejo petition in Illinois.

14

Committee, 483 U.S. 522 (1987); Polk County v. Dodson, 454 U.S. 312 (1981). As the Complaint contains no other allegation by which the private Defendants could be found to have acted under color of state law, Plaintiffs have not satisfied § 1983's state action requirement.

    D.   <u>Failure to Satisfy the § 1985 Discrimination Requirement</u>

To state a claim under 42 U.S.C. § 1985, a plaintiff must demonstrate: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or deprived of a constitutional right. <u>Thomas v. Roach</u>, 165 F.3d 137, 146 (2d Cir. 1999). Under § 1985, the conspiracy and conspirators must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus." <u>Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1088 (2d Cir. 1993)(quoting <u>Scott</u>, 463 U.S. at 829).

Plaintiffs claim to have suffered invidious discriminatory animus based on their status as a class of independent voters. However, by their own admission, seven of the ten Plaintiffs are "not enrolled in a political party." (Compl., ¶ 2.) Class-based discrimination against these seven Plaintiffs would seem to be made rather difficult, if not impossible, as these Plaintiffs themselves refuse to be politically classified. <u>See</u>, <u>e.g.</u>,

15

Compl., Intro. ("The plaintiffs are individuals who, by dint of their non-enrollment in a political party and/or their orientation as political independents," sought the opportunity to vote for Nader in the November 2004 general election. The CUIP is "an organization that seeks to advance the cause of independent politics in the national political arena and in particular to further the development of the third party.").

More importantly, the Supreme Court and Court of Appeals have rejected political affiliation as a grounds for class membership under § 1985. Though the Court of Appeals in Keating v. Carey, 706 F.2d 377, 386-88 (2d Cir. 1983), originally found political parties to be protected groups under § 1985, the Supreme Court in Scott, 463 U.S. at 836-37, held that § 1985 might not extend to discrimination against political groups except where that discrimination was based on racial animus. After Scott, the Fourth Circuit considered Keating and declined to follow it, holding that "Republicans as a class are not protected by § 1985." Harrison v. KVAT Food Management, Inc., 766 F.2d 155, 161-162 (4th Cir. 1985).

The Court of Appeals and district courts in the Second Circuit have since adopted the Scott/Harrison reasoning. See Gleason v. McBride, 869 F.2d 688, 695 (2d Cir. 1989) (acknowledging Scott and Harrison and expressing doubt that political affiliation can form the basis of a § 1985 claim); Juncewicz v. Patton, No. 01-CV-0519E, 2002 U.S. Dist. LEXIS

16

22651, at *12 (W.D.N.Y. Oct. 8, 2002); Adamczyk v. City of Buffalo, No. 95-CV-1023E(H), 1998 U.S. Dist. LEXIS 2134, at *6 (W.D.N.Y. Feb. 23, 1998); Dwares v. The City of New York, 90 Civ. 4435, 1992 U.S. Dist. 1412, at *11 (S.D.N.Y. Feb. 10, 1992), vacated on other grounds by Dwares, 985 F.2d 94, 99 (2d Cir. 1993).[8] As this Circuit does not recognize political affiliations for purposes of class membership under § 1985, I find that Plaintiffs have not alleged invidious discriminatory animus and therefore do not have a cognizable § 1985 claim.

IV. Conclusion

For the reasons set out above, Defendants' motions to dismiss (Docket Nos. 5, 6, 7, 8, 9, 10, 14, 17, 23, 34 and 36) are granted. The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED

September 7, 2005

*Loretta A. Preska*
Loretta A. Preska, U.S.D.J.

---

[8] The cases that Plaintiffs cite in opposition to this line of authority are both out of Circuit and out of date. Cameron v. Brock, 473 F.2d 608 (6th Cir. 1973), was decided nearly a decade before the Supreme Court decided Scott and is consequently irrelevant. Stevens v. Rifkin, 608 F. Supp. 710 (N.D. Cal.1984), protected the White Panthers, a dissident political group, under § 1985 -- but Stevens cites Keating with approval and fails to even mention Scott. Id. at 722. Perez v. Cucci, 725 F. Supp. 209, 252-53 (D.N.J. 1989), considers Scott, but "agrees with the analysis set forth in Keating" and finds political affiliation protected under § 1985. Perez alone, however, is insufficient to overcome the considerable weight of authority outlined above following Scott and Gleason.